Pier Paolo Caputo, Esq. (SBN: 176698)
LAW OFFICES OF PIER PAOLO CAPUTO
1101 North Pacific Avenue, Suite 207
Glendale, California 91202
Telephone: (213) 228-3325
Facsimile:   (213) 406-1252
E-mail Address: paulcaputolawoffice@gmail.com

Attorneys for Plaintiff:
JENNIFER PERSONIUS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| JENNIFER PERSONIUS, an individual;<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>SPECIALIZED LOAN SERVICING, LLC A DELAWARE LIMITED LIABILITY COMPANY;BANK OF AMERICA, N.A.;  A NATIONAL BANK ASSOCIATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO, and DOES 1 to 50, inclusive;<br><br>　　　　Defendant(s). | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>　**1)　Breach Of Contract (Re. Permanent Loan Modification)**<br><br>　**2)　Unfair Business Practices (Fraudulent Prong) Cal. B&P §17200**<br><br>　**3)　Violation Of The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 Et Seq.;**<br><br>　**4)　Violation Of The Fair Credit Reporting Act, 15 U.S.C. § 1681, Et Seq.;**<br><br>　**5)　Violation Of The California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, Et Seq.;**<br><br>　**6)　Defamation**<br><br>**PUNITIVE & EXEMPLARY DAMAGES DEMANDED**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff, for just cause, alleges as follows:

# GENERAL ALLEGATIONS

1. Jennifer Personius ("Plaintiff") is, and at all times mentioned herein, was an individual residing in the County of Los Angeles, State of California.
2. Defendant Specialized Loan Servicing, LLC ("SLS") is, and at all times mentioned herein, was a Delaware Limited Liability Company whose primary corporate address is in the City of Highlands Ranch, in the State of Colorado.
3. Defendant Bank of America, N.A. ("Bank of America") is, and at all times mentioned herein, was a National Association.
4. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1-10, inclusive, and therefore Plaintiff sues said Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when and as same are ascertained.
5. Plaintiff is informed and believes and thereupon alleges that, at all times herein mentioned and unless otherwise indicated, each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency and/or employment.

# JURISDICTION AND VENUE

6. This Court has jurisdiction of this action pursuant to 15 U.S.C. § 1692 *et seq.* and 28 U.S.C. §§ 1331 and 1337 in that certain claims alleged herein arise under the laws of the United States
7. This Court's Venue is appropriate pursuant to 28 U.S.C. § 1391.

# FIRST CAUSE OF ACTION
# BREACH OF CONTRACT

**(Against All Named Defendants and Doe Defendants 1 -5, Inclusive.)**

8. Plaintiff re-alleges and incorporates by reference all allegations in paragraphs 1 to 7, inclusive, of this complaint.
9. On or about April 4, 2007, Plaintiff obtained a residential loan from Countrywide Bank, N.A. that is secured by a deed of trust **(EXHIBIT A)**.
10. Thereinafter the servicing of the home loan was transferred to Defendant Bank of America.
11. On or about April 1, 2013, Plaintiff and Defendant, Bank of America, entered into and executed a Permanent Loan Modification ("PLM") that modified the terms of the initial loan agreement. **(EXHIBIT B)**.
12. The Loan Modification was the product and consideration of an executed settlement agreement to a litigation between Plaintiff and Defendant Bank of America (state civil action -- Superior Court of California, County of Los Angeles, Central District Case No. BC492475). After the settlement agreement was executed, Defendant Bank of America had drafted the PLM and presented it to Plaintiff for her approval and execution. Plaintiff unequivocally accepted the terms of the PLM and signed it. Thereafter Bank of America's authorized officers signed the agreement.
13. At all times herein, Plaintiff performed all the terms of the PLM including, but not limited to all of the acknowledgements and preconditions set forth of said loan modification, as well as making all the payments in a timely fashion under the terms of the PLM.

*Relevant Terms Of The PLM Agreement:*

14. In the PLM, Bank of America expressly acknowledges that it is being provided to Plaintiff because Plaintiff contends she had a financial hardship:

**My Representations and Covenants:** I am experiencing a financial hardship, and as a result, (1) I am in default under the Loan Documents or my default is imminent, and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future."

15. Based on the express terms of the contract that was drafted by Bank of America, the amount owed as of the date the loan modification agreement was signed was $1,126,620.40 that includes all amounts and arrearages including escrow advances:

**The Modification:**

"The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (*including* unpaid and deferred interest, fees, charges, *escrow advances*, and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan). *The new principal balance of my Note will be $1,126,620.40* (the "New Principal Balance"). I understand that this means that interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement. I understand that interest will not accrue on the Deferred Principal Balance, which is further defined below." [*emphasis*]

16. The PLM specifies the monthly mortgage payments to be made by Plaintiff as follows:

- ■ Years 1-3, Interest Rate 2.000%, Principal and Interest Payment $2,674.23, Estimated Monthly Escrow Payment Amount $1,026.68 may adjust periodically, Total Monthly Payment $3,700.91, Payment Begins on 4/1/2013, Number of Monthly Payments 36.

- Year 4, Interest Rate 3.000%, Principal and Interest Payment $3,128,87, Estimated Monthly Escrow Payment Amount $1,026.68 may adjust periodically, Total Monthly Payment $4,155.55, Payment Begins on 4/1/2016, Number of Monthly Payments 12.
- Year 5, Interest Rate 4.000%, Principal and Interest Payment $3,610,71, Estimated Monthly Escrow Payment Amount $1,026.68 may adjust periodically, Total Monthly Payment $4,637.39, Payment Begins on 4/1/2017, Number of Monthly Payments 362.

*The Assignment Of Plaintiff's Loan And PLM To SLS:*

17. On or about December 1, 2013, Defendant Bank of America's servicing rights, duties and obligations under the loan modification agreement was assigned to Defendant SLS.
18. Through said assignment, Plaintiff is informed and believes that SLS has "stepped into the shoes" of Defendant Bank of America, and has undertaken to perform all of the duties and responsibilities of Bank of America under the PLM.
19. Furthermore, pursuant to the settlement agreement entered into between Plaintiff and Bank of America, all rights and responsibilities are inured on SLS without releasing the rights and responsibilities of the original parties. Thus, SLS and Bank of America are now jointly and severally bound to honor the terms of the LM and the settlement agreement.
20. DOES 1 – 10 are assignees, beneficiaries or delegates of Defendant Bank of America under the PLM, and are either dispensable or indispensable parties to this action by being in privity of contract with Plaintiff under the PLM.

*SLS Breaches The Terms Of The Plm:*

21. In a timely manner, on or about May 9, 2014, Plaintiff mailed the mortgage payment for the month of May 2014.

22. SLS did not apply the mortgage payment towards Plaintiff's scheduled mortgage payment of $3,700.91, Rather they allocated the sum in a suspense account.

23. On or about May 12, 2014, SLS, sent a mortgage statement, demanding that Plaintiff immediately pay $3,908.35.

24. Plaintiff immediately contacted Defendant SLS asking for an explanation. An SLS representative informed Plaintiff that Bank of America miscalculated the amount owed at the time of the PLM; in that, some of the escrow advances were omitted in the calculation of the amount owed under the PLM.

25. Without providing any further explanation as to when and what was the escrow payment used for, the SLS representative became evasive in its answer and conclusively stated that it pertained to an escrow shortage in the amount of $6,937.03 which was going to be spread out over a period of 23 months.

26. On that same telephonic communication, Plaintiff explained to the SLS representative that the mortgage payments under the PLM were calculated based on what Plaintiff could afford, and that Plaintiff could not afford to pay beyond what has been agreed upon by the parties.

27. Defendant SLS persisted that Plaintiff pay the $6,937.03 immediately or over a period of 5 years to cover the difference.

28. Plaintiff informed Defendant SLS that this would cause her some hardship.

29. However, Plaintiff was amenable to settle her dispute with SLS by agreeing that the $6,937.03 be added to the … which, under the PLM agreement, it due as a balloon payment on the maturity date of the note. Defendant SLS refused Plaintiff's offer.

30. SLS and Bank of America breached the PLM agreement commencing on May 12th 2014 and continuing to the date of this complaint when SLS failed to perform their duties under the PLM by not applying Plaintiff's mortgage payment as expressed in the schedules of the PLM.

31. Furthermore, an [anticipatory] breach had also occurred by said two defendants (Bank of America and SLS) when SLS filed and served Plaintiff with a Notice of Default **(EXHIBIT C)** for Plaintiff's failure to pay the additional sum demanded by SLS.

32. As an assignee of the PLM agreement, Defendant SLS has breached the Loan Modification Agreement by failing and refusing to honor the terms of loan modification agreement that was executed by Defendant Bank of America and Plaintiff.

33. As a direct and proximate result of the breach of the Loan Modification Agreement, Plaintiff is facing a foreclosure of her home and has been damaged in the sum to be proven at time of trial.

34. Plaintiff further prays that SLS's specifically performs under the terms of the PLM.

35. Plaintiff further prays for a temporary restraining order and preliminary injunction against SLS, restraining SLS from pursuing the foreclosure of Plaintiff's home.

36. Plaintiff further prays for permanent injunction against SLS, restraining SLS from pursuing the foreclosure of Plaintiff's home so long as Plaintiff is not in default of her loan.

37. Plaintiff further prays for costs and attorney fees pursuant to the terms of the parties' agreements., including the confidential settlement agreement that was entered by and between Plaintiff and Bank of America that inured upon Bank of America's assignees (e.g. SLS).

## SECOND CAUSE OF ACTION

# UNFAIR BUSINESS PRACTICES – FRAUDULENT PRONG
# CAL. B&P CODE § 17200
### (Against Defendant SLS and Doe Defendants 5 -10, inclusive.)

38. Plaintiff re-alleges and incorporates by reference all allegations in paragraphs 1 to 37, inclusive, of this complaint.

39. SLS is in conducting business in the state of California as a loan servicer. As a loan servicer, SLS has undertaken the following duties:

   a. Follow and apply the terms of any loan agreement, including the terms expressed in promissory note and deeds of trusts, as well as any subsequent agreement that amends the terms of any promissory notes and deeds of trusts (such as permanent loan modifications);

   b. Respond truthfully to a borrower's inquiries, including responding truthfully to Qualified Written Requests submitted by borrowers.

*SLS's Misleading Responses To Plaintiff's Qualified Written Request:*

   *1st Misleading Statement:*

40. On or about July 1, 2014, Plaintiff by and through her counsel, served a Qualified Written Request ("QWR") upon Defendant SLS under the Real Estate Settlement Procedures Act, [RESPA] pursuant to *12 U.S.C. 2605 (e)*, et seq. as well as a request for the assignee's information under the Truth In Lending Act [TILA] *15 U.S.C. 1641(f)(2)*, et seq. **(EXHIBIT D)**

41. On or about August 14, 2014, Defendant SLS responded to the QWR stating that:

   "Per the terms of the Loan Modification Agreement, the escrow payment *may be adjusted periodically* in accordance with applicable law. Therefore, your client's total monthly payment may change accordingly. Your client's current monthly principal, interest payment, escrow

and the escrow shortage amount is $3908.35." **(EXHIBIT E).**

42. This statement is false and misleading, there was no event that transpired subsequent to the execution of the PLM that would justify an "adjustment" to the escrow account.

*2nd Misleading Statement:*

43. A second misleading statement was made by SLS when the latter provided an Annual Escrow Account Disclosure Statement – Projections through the use of U.S. Mail. The statement states that an escrow expenditure transpired on:
    - 04/2014   $1026.68;
    - 03/2014   $1672.55

Plaintiff is informed and believes that such information is false and was intended to mislead her to believe that the escrow expenditure transpired after the PLM was executed.

44. On or about October 2, 2014, Plaintiff, by and through her counsel, requested that Defendant SLS provide a detailed information about the new charges Defendant SLS added to the escrow account, including the changed circumstances that resulted in the additional escrow charges.

45. SLS did not reply to the inquiry.

46. Beginning on or about May 12, 2014, Defendant SLS unilaterally elected to apply one (1) of the mortgage payments towards the purported escrow shortage that was in existence prior to the loan modification agreement.

47. Subsequent to the execution of the loan modification agreement, SLS further increased Plaintiff's mortgage payment by $207.44. Plaintiff is informed and believes that the property taxes, homeowner's insurance or any other escrow

expenditure, did not fluctuate to justify an annual increase of $2489.28 to the modified mortgage payment.

48. Plaintiff and his counsel spent many hours attempting to resolve the dispute with SLS. However, SLS's evasive responses to Plaintiff's inquiry has discouraged Plaintiff to seek a reasonable clarification of this additional charges.

### 3rd Misleading Statement:

49. The SLS's representative, namely Ashley Teller ID#4772, who signed the response to the QWR (**EXHIBIT E**) provided a phone number where she can be reached.

50. Plaintiff and her counsel attempted to reach this individual as the phone number stated. This individual does not exist or is un-reachable. No other individual at that phone number is capable to locate "Ashley" nor can any other individual at that phone number competently answer or address Plaintiff's concerns regarding the added charges.

### Plaintiff's Harm From SLS's Misleading Conduct:

51. On or about, July 17, 2015, SLS mailed Plaintiff via U.S. First class mail a notice of default with intent to foreclose.

52. SLS also reported to the credit reporting agencies that Plaintiff is delinquent on her loan. The intent to foreclose was also reported to said credit reporting agencies.

### Plaintiff's Prayer for relief:

53. Plaintiff seeks to enjoin SLS from:
   a. Having a person sign the QWR who is either non-accessible or is sign an alias name of an individual that does not exist.
   b. Using misleading answers as an evasive means for not providing a detailed breakdown of disputed escrow charge.(s)

54. Reporting to the credit agencies that the borrower has missed a payment when in fact SLS misapplying the mortgage payments to the disputed escrow charges. Plaintiff further prays for a temporary restraining order and preliminary injunction against SLS, restraining SLS from pursuing the foreclosure of Plaintiff's home.

55. Plaintiff further prays for permanent injunction against SLS, restraining SLS from pursuing the foreclosure of Plaintiff's home so long as Plaintiff is not in default of her loan.

56. Plaintiff seeks restitution of all monies collected by SLS that are in excess of the sums called for under PLM agreement.

57. Plaintiff further prays for costs and attorney fees

## THIRD CAUSE OF ACTION
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 Et Seq.
## (Against Defendant SLS and Doe Defendants 5 -10, inclusive.)

58. Plaintiff re-alleges and incorporates by reference all allegations in paragraphs 1 to 57, inclusive, of this complaint.

59. Plaintiff is a "consumer" as that term is defined by the Fair Debt Collection Practices Act, ("FDCPA") 15 U.S.C. §1692a(3).

60. Defendant, SLS, is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).

61. Defendant, SLS, is not subject to, and cannot claim, the exemption provided by 15 U.S.C. § 1692a(6)(d).

62. Defendant, Bank of America, is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).

63. Defendant, Bank of America, is not subject to, and cannot claim, the exemption provided by 15 U.S.C. § 1692a(6)(d).
64. The financial obligation sought to be collected from Plaintiff is a "debt" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(5).
65. On or about May 12, 2014, Defendant SLS sent a mortgage statement demanding that Plaintiff pay a total amount due of $3,908.35. Under the PLM agreement, Plaintiff is required to pay $3,700.91. Said mortgage statement reflected that Plaintiff was required to pay a regular monthly payment of $3,908.35 and $1,234.12 for escrow due on June 1, 2014.
66. SLS increased Plaintiff's mortgage payment was unreasonable and without legal justification.
67. Plaintiff has demanded that Defendant SLS perform its part by honoring the terms of the PLM agreement. Defendant SLS has failed and refused, and continues to fail and refuse to take any steps necessary to honor the terms of the PLM agreement.
68. Thereafter, Defendant SLS and Does 8–13 inaccurately reported to the credit bureaus that Plaintiff had missed a mortgage payment. **(EXHIBIT F).**
69. Subsequently or on about July 17, 2015, SLS mailed or caused to be filed a Default Notice and Notice of Intent to Foreclose for Plaintiff's failure to pay the purported escrow shortage that was in existence prior to the loan modification agreement that Defendant Bank of America prepared and before the parties executed the loan modification agreement. **(EXHIBIT C).**
70. Plaintiff has fully performed all conditions, covenants, and promises to be performed on the part of Plaintiff under the Loan Modification Agreement signed between Plaintiff and Defendant Bank of America.
71. Defendants violated the FDCPA, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10) and 1692f by making false and misleading representations, and engaging in unfair and abusive practices. Defendants' violations include, but

are not limited to attempting to collect sums in excess of what is agreed upon under the terms of the loan modification agreement.

72. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs and reasonable attorney's fees, pursuant to 15 U.S.C.§ 1692k.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT,
### *15 U.S.C. § 1681, Et Seq.*
**(Against Defendant SLS and Doe Defendants 5 -10, inclusive.)**

73. Plaintiff re-alleges and incorporates by reference all allegations in paragraphs 1 to 71, inclusive, of this complaint.

74. To three credit reporting agencies Experian, TransUnion and Equifax, Defendant SLS reports whether Plaintiff and other similarly situated borrowers are making their mortgage payments on time, or whether Plaintiff and such other similarly situated borrowers are late on their payments.

75. Does 5 to 15 assist Defendant SLS in reporting Plaintiff's payment performance to the three credit reporting agencies.

76. Plaintiff has timely made all the mortgage payments pursuant to the terms of the PLM.

77. Defendants SLS and Does 5 to 15 knew or should have known Plaintiff was making her mortgage payment in a timely fashion.

78. Contrary to this fact, commencing on or about June of 2014 and each month thereafter, Defendant SLS and Does 5 to 15 knowingly and falsely reported to the credit reporting agencies that Plaintiff is in default of her loan. Each

79. Defendant SLS and Does 5 to 15 reported such false statements to the credit reporting agencies on a monthly basis, commencing on June of 2014 and continuing up to the date of this complaint.

80. Defendant SLS also reported to each credit reporting agencies that Plaintiff is facing foreclosure. (**See e.g. EXHIBIT F**).

81. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the Fair Credit Reporting Act, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

82. As a result of each and every noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681o(a)(2), from Defendants.

83. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to:

   a. actual damages according to proof as the Court may allow pursuant to 15 U.S.C. §1681n(a)(1);
   b. statutory damages according to proof pursuant to 15 U.S.C. § 1681n(a)(1);
   c. punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2);
   d. reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, *Cal. Civ. Code § 1785.1, Et Seq*.**
(**Against Defendant SLS and Doe Defendants 1 -10, inclusive.**)

84. Plaintiff re-alleges and incorporates by reference all allegations in paragraphs 1 to 83, inclusive, of this complaint.
85. Plaintiff has timely made all the mortgage payments pursuant to the terms of the PLM.
86. Defendants SLS and Does 5 to 15 knew or should have known Plaintiff was making her mortgage payment in a timely fashion.
87. Defendants SLS and Does 5 to 15 knew or should have known Plaintiff was making her mortgage payment in a timely fashion.
88. Contrary to this fact, commencing on or about June of 2014 and each month thereafter, Defendant SLS and Does 5 to 15 knowingly and falsely reported to the credit reporting agencies that Plaintiff is in default of her loan. Each
89. Defendant SLS and Does 5 to 15 reported such false statements to the credit reporting agencies on a monthly basis, commencing on June of 2014 and continuing up to the date of this complaint.
90. Defendant SLS also reported to each credit reporting agencies that Plaintiff is facing foreclosure. (**See e.g. EXHIBIT F**)**.**
91. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.
92. In the regular course of its business operations, Defendants routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendants' consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.
93. Because Defendants are partnerships, corporations, associations, or other entities, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Defendants are and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known that the

information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). Since Defendants received notice that Plaintiff's accounts were reporting inaccurately, Defendants should have adjusted Plaintiff's accounts accordingly, but yet failed to do so.

94. Whereby Plaintiff prays for:
   a. Actual and Statutory damages according to proof
   b. Attorney fees
   c. Costs of suit

## SIXTH CAUSE OF ACTION
## DEFAMATION (*Cal. Civ. Code § 45*)
## (Against Defendant SLS and Doe Defendants 3 -25, inclusive.)

95. Plaintiff re-alleges and incorporates by reference all allegations in paragraphs 1 to 94, inclusive, of this complaint.

96. At all times herein this complaint, Plaintiff has timely made all the mortgage payments pursuant to the terms of the PLM.

97. Contrary to the truth as alleged in the prior paragraph, Defendant SLS knowingly reported to the credit reporting agencies that Plaintiff is in default of her loan and is 30 days past due each month thereafter.

98. Defendant SLS also reported to each credit reporting agencies that Plaintiff is facing foreclosure. (**See e.g. EXHIBIT F).**

99. The false statements made by SLS to the Credit Reporting Agencies commenced on June of 2014 and were repeated each month thereafter. As of the date of this Complaint, Defendant has not ceased to publish such false statements.

100. As a result the negative and false statement provided by SLS and Does 5-25 to the credit reporting agencies, Plaintiff's credit rating dropped drastically.

101. The negative credit reports caused by Defendant SLS's false statements prevented Plaintiff from acquiring assets , and disrupted her financial planning for her retirement.

102. As of the date of this complaint Plaintiff is unable to use her credit in a beneficial and fruitful manner due to Defendant SLS's continuous false statement published to the credit reporting agencies.

103. Defendants SLS and Does 5-15 conduct of providing false information to the crediting agency, was malicious and with the intent to oppress Plaintiff legal rights to enjoy the benefits under the PLM agreement by forcing and intimidating Plaintiff to pay sums that were not contracted for, and are over and beyond the contracted obligations under the PLM.

104. As a result of Defendant's willful, malicious and oppressive conduct Plaintiff is entitled to punitive damages.

//

**WHEREFORE,** Plaintiff Jennifer Personius prays for judgment against Defendants as follows:

AS TO THE FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT:

1. Specific Performance to the terms of the loan agreement;
2. Actual damages according to proof;
3. Costs of suit herein incurred; and
4. For attorney fees.

AS TO THE SECOND CAUSE OF ACTION FOR B&P17200:

1. Preliminary and Permanent injunction to prevent Defendants from foreclosing on Plaintiff's residence;

2. Preliminary and Permanent injunction to enjoining Defendant from misapplying Plaintiff's loan payment;
3. Restitution of all payments collected in excess to the scheduled terms in the PLM; and
4. Costs of suit herein incurred; and
5. For attorney fees.

AS TO THE THIRD, FOURTH AND FIFTH CAUSE OF ACTIONS:

1. Actual damages according to proof;
2. Statutory Damages
3. Costs of suit herein incurred; and
4. For attorney fees.

AS TO THE SIXTH CAUSE OF ACTIONS UNDER DEFAMATION:

1. Actual damages according to proof.
2. Punitive damages for Defendant's conduct of knowingly and maliciously publishing a false report on Plaintiff's credit report; and

AS TO ALL CAUSES OF ACTIONS:

For any other remedy at law or in equity as the court may deem proper.

Dated: March 18th 2016                    Respectfully submitted,

                                          LAW OFFICES OF PIER PAOLO CAPUTO

                                          By: _____
                                          Pier Paolo Caputo, Esq.
                                          Attorneys for Plaintiff,
                                          Jennifer Personius

COMPLAINT